# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DENISE LANTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16 C 2351 |
| v. ) | |
| ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On April 8, 2016, Plaintiff Denise Lanton brought a ten-count First Amended Complaint alleging violations of the United States and Illinois Constitutions, as well as claims pursuant to 42 U.S.C. § 1981, against her employer Defendant City of Chicago pursuant to the Court's original and supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1367. Before the Court is Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part Defendant's motion. The Court grants Plaintiff leave to file a Second Amended Complaint in accordance with this ruling – keeping in mind counsel's Rule 11 obligations – by no later than September 9, 2016.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule

8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1397, 1949, 172 L.Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## BACKGROUND

In her First Amended Complaint, Plaintiff alleges that she has been the City's employee since 1988 starting as a paralegal in the City's Law Department. (R. 12, First Am. Compl. ¶ 6.) In 1994, Plaintiff was promoted to Assistant to the Commissioner in the Department of Streets and Sanitation (hereinafter "Streets & Sanitation"). (*Id.* ¶ 7.) In 1999, Plaintiff was promoted to the position of Administrative Service Officer II – a position she still holds. (*Id.* ¶ 8.) Plaintiff alleges that the City classifies her position as a "Career Service" position and that this means she has greater rights and protections than an "at-will" employee as outlined in the City's Personnel Rules. (*Id.* ¶ 9.) In her role as Administrative Service Officer II, Plaintiff works on labor relations matters, hiring practices disciplinary issues, grievances, arbitrations, and policy development within Streets & Sanitation. (*Id.* ¶ 10.)

2

On February 17, 2014, the City's Department of Human Resources posted a position for Labor Relations Supervisor in Streets & Sanitation, which would be a promotion for Plaintiff. (*Id*. ¶¶ 11, 12.) Plaintiff applied for the position, and on May 8, 2014, the City interviewed her in accordance with the required hiring procedures. (*Id.* ¶ 13.) According to Plaintiff, the interview process for these types of positions in the City is very structured. (*Id.* ¶ 14.) More specifically, the City screens the candidates who are then reviewed by the Inspector General's Office and ranked numerically. (*Id*. ¶ 15.)

After her interview, the Streets & Sanitation's Personnel Division informed Plaintiff that the result of the hiring panel's consensus ranked her as the first alternate for the position of Labor Relations Supervisor – above all other candidates except the individual who they selected for the position. (*Id*. ¶ 16.) On May 19, 2014, the Director of Personnel, Maria Contreras, called Plaintiff to notify her that the first choice candidate for the Labor Relations Supervisor position had declined the City's job offer. (*Id*. ¶ 17.) Because Plaintiff was the first alternate choice, Contreras offered Plaintiff the job, and Plaintiff accepted that same day. (*Id*.) Plaintiff alleges that she was scheduled to start as the Labor Relations Supervisor on June 1, 2014. (*Id*. ¶ 18.)

On May 21, 2014, Noelle Brennan, the federal court-appointed monitor of the *Shakman* Consent Decree, filed her "Corrected May 21, 2014 Report on Substantial Compliance." (*Id*. ¶ 19.) Brennan was responsible for monitoring how the City complied with the *Shakman* Decree, which prevented the City from basing its hiring decisions on an applicant's political affiliation. (*Id*.) In her May 2014 report, Brennan recommended that the federal court no longer needed to actively monitor the City's hiring practices. (*Id*. ¶ 20.) Brennan, however, recommended that certain individual employees needed "further investigation." (*Id*.) Plaintiff was one of the

individuals who Brennan had identified as needing "further investigation." (*Id*. ¶ 22.)

In addition, Plaintiff alleges that on May 22, 2014, the Commissioner of the Department of Human Resources, Soo Choi, spoke with Brennan regarding Plaintiff's hiring to the position of Labor Relations Supervisor. (*Id*. ¶ 23.) Brennan gave her opinion that the City should not hire Plaintiff in this role because the job was connected to the hiring process. (*Id*.) Nevertheless, on May 27, 2014, Plaintiff met with Contreras to complete the hiring paperwork. (*Id*. ¶ 24.) At this meeting, the Commissioner of Streets & Sanitation, Charles Williams, told Plaintiff that there was a problem with Human Resources, but that he would work on it. (*Id*.) Commissioner Williams directed Contreras to proceed with finalizing Plaintiff's hiring paperwork. (*Id*.) Meanwhile, on May 29, 2014, Christina Batorski, Deputy Commissioner in Human Resources, sent an email to Human Resources staff and recruiters with a list of employees to exclude from job positions that involved duties relating to the hiring process. (*Id.* ¶ 25.)

On June 2, 2014, Brennan amended her report regarding Plaintiff. (*Id*. ¶ 26.) More specifically, Brennan renewed her request to "exclude [Plaintiff] from the hiring process in its entirety and to exclude her from positions wherein she would exercise significant control and discretion over other similar employment actions." (*Id*.) Plaintiff alleges that Brennan based her findings on an interview Brennan had conducted with Plaintiff in November 2012 regarding the hiring process for a Traffic Maintenance Supervisor position that took place in 2001. (*Id*. ¶ 27.)

According to Plaintiff, the City never conducted an investigation into Brennan's recommendation for "further investigation," although the City notified Brennan that it had disciplined Plaintiff by barring her from participating in any aspect of the hiring process. (*Id*. ¶

4

28.) Plaintiff alleges that the City never gave her an opportunity to defend herself against Brennan's allegations of wrongdoing – such as notice of the allegations, a hearing, or an opportunity to be heard, despite her written requests to the Streets & Sanitation's Commissioner. (*Id*.)

At some point in June 2014, Plaintiff was told that she would not be able to take the position as the Labor Relations Supervisor. (*Id*. ¶ 29.) On June 24, 2014, Plaintiff sent a letter to Commissioner Williams requesting the documents underlying the decision to revoke her job offer and an opportunity to respond to Brennan's allegations. (*Id*. ¶ 30.) In that letter, Plaintiff explained that Brennan based her report on innuendoes of participants in a past hiring fraud scheme. (*Id*. ¶ 31.) Plaintiff further stated in the letter that there was no direct evidence of her involvement in any hiring fraud. (*Id*. ¶ 31.) Thereafter, throughout the remainder of 2014 and 2015, Plaintiff asked her immediate supervisor, Deputy Commissioner Steve Sorfleet, as well as Deputy of Administration James Crocker, if they had received Brennan's allegations of misconduct against her. (*Id*. ¶ 32.)

Also throughout the remainder of 2014 and 2015, Plaintiff continued to receive emails for promotional positions. (*Id*. ¶ 33.) Plaintiff applied to seven of these positions, but was never selected for an interview. (*Id*. ¶ 34.) Plaintiff further alleges that in response to Brennan's recommendation, she was stripped of any responsibility involved in the hiring process at Streets & Sanitation. (*Id*. ¶ 35.) Moreover, Plaintiff alleges that despite her letters to Commissioner Williams seeking the documentation underlying the revocation of her job offer, she never received an answer to her requests. (*Id*. ¶ 36.) It was not until Plaintiff filed her charge with Equal Employment Opportunity Commission that she saw some of the documentation that she

had repeatedly requested.[1] (*Id.* ¶ 37.)

On January 7, 2016, the Chicago Fire Department ("CFD") contacted Plaintiff via email asking her to interview for a Labor Relations Supervisor position with the CFD. (*Id.* ¶ 38.) This position was the same position Plaintiff could not take due to Brennan's recommendation in June 2014. (*Id.*) According to Plaintiff, in order for CFD to contact her to set up an interview, the City's Inspector General would have had to have approved her inclusion on the CFD's referral list. (*Id.*) The next day, Plaintiff accepted the CFD's request to interview. (*Id.* ¶ 39.) On January 12, 2016, Joann McNeil, Supervisor of Personnel Services for the CFD, told Plaintiff that the CFD had to cancel her interview at the behest of the City's Human Resources Department. (*Id.* ¶ 40.) In response, Plaintiff emailed McNeil asking her why the CFD cancelled her interview. (*Id.* ¶ 41.) McNeil stated that she did not know why and gave Plaintiff the contact information of Deputy Commissioner Batorski from the City's Human Resources Department. (*Id.*) Batorski responded to Plaintiff on February 3, 2016 via email stating that Plaintiff was unable to participate in the hiring process because of Brennan's finding, namely, that Plaintiff was not eligible for the CFD position, and that Plaintiff's inclusion on the referral list was in error. (*Id.* ¶¶ 42, 43.)

On March 11, 2016, Plaintiff learned that an individual named Christopher Suave was promoted to a Deputy Commissioner position with Streets & Sanitation in February 2016. (*Id.* ¶ 44.) Plaintiff alleges that she is an African-American female who is 59-years-old and that Suave is Caucasian male who is younger. (*Id.* ¶¶ 45, 46.) Further, Plaintiff alleges, upon information

---

[1] In her First Amended Complaint, Plaintiff does not allege claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") or the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").

and belief, that Suave was recommended for and received harsher discipline from the Federal Monitor than she did. (*Id*. ¶ 47.) Specifically, Plaintiff maintains that the City suspended Suave for a period of time due to the Federal Monitor's findings and that despite this discipline, Suave's ability to be promoted to Deputy Commissioner was not hindered. (*Id*. ¶ 49.) To date, Plaintiff remains barred from promotion due to the Federal Monitor's recommendations. (*Id*. ¶ 50.)

Based on these facts, Plaintiff brings the following claims against the City of Chicago: (1) a Fourteenth Amendment due process property deprivation claim (Count I); (2) a Fourteenth Amendment due process liberty deprivation claim (Count II); (3) a deprivation of property claim under the due process clause of the Illinois Constitution (Count III); (4) a deprivation of liberty claim under the due process clause of the Illinois Constitution (Count IV); (5) a race discrimination and hostile work environment claim under 42 U.S.C. § 1981 (Count V); (6) a failure to promote claim based on race discrimination under § 1981 (Count VI); (7) a Fourteenth Amendment equal protection claim based on race (Count VII); (8) a denial of equal protection claim under the due process clause of the Illinois Constitution based on race (Count VIII); (9) a Fourteenth Amendment equal protection claim based on gender (Count IX); and (10) a denial of equal protection claim under the due process clause of the Illinois Constitution based on race (Count X).

## ANALYSIS

### I. Municipal Liability – Counts I, II, VII, and IX

In Counts I, II, VII, and IX, Plaintiff alleges Fourteenth Amendment due process and equal protection claims based on the City's enforcement and application of the *Shakman* Decree

and the Federal Monitor's findings. *See* 42 U.S.C. § 1983. The Court turns to the background of the *Shakman* Decree (also known as the "*Shakman* Accord") for context. As the Seventh Circuit recently explained:

> The *Shakman* Accord was designed, in general, to eliminate political considerations in employment decisions made by the City. Pursuant to the *Shakman* Accord, the City agreed to create and implement a hiring plan to effectuate the goal of eradicating political patronage. *Shakman* "adds speech and political affiliation to the list" of impermissible bases of employment discrimination delineated by Title VII of the Civil Rights Act of 1964. Specifically, the consent decree entered June 20, 1983, in *Shakman v. Democratic Org.,* 569 F.Supp. 177 (N.D. Ill. 1983), precludes the City from "conditioning, basing or knowingly prejudicing or affecting the hiring of any person as a Governmental Employee (other than for Exempt Positions), upon or because of any political reason or factor including, without limitation, any prospective employee's political affiliation, political support or activity, political financial contributions, promises of such political support, activity or financial contributions, or such prospective employee's political sponsorship or recommendation."

*Bonnstetter v. City of Chicago,* 811 F.3d 969, 971 (7th Cir. 2016) (internal citation omitted). In order to bring a "*Shakman*" claim, a job applicant "must allege that a political reason or factor was the cause of the adverse employment action." *Id.* at 973. In other words, "the *Shakman* Accord prohibits political discrimination in employment, and the basis of a *Shakman* claim must be impermissible political discrimination." *Id.*

In her First Amended Complaint, Plaintiff does not allege a "*Shakman*" employment discrimination claim, but instead alleges that the City of Chicago's enforcement and application of the *Shakman* Decree and the Federal Monitor's findings violated her Fourteenth Amendment due process and equal protection rights. Therefore, although the "*Shakman* consent decree waives the limitations on *respondeat superior* liability that might otherwise obstruct collection from public bodies," in relation to *Shakman* claims, *see Hernandez v. O'Malley,* 98 F.3d 293, 294-95 (7th Cir. 1996), Plaintiff's claim is based on the City's custom, practice, or policy of

8

applying and enforcing the *Shakman* Decree and the Federal Monitor's findings. As such, Plaintiff must establish the City's liability pursuant to *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See Simstad v. Scheub,* 816 F.3d 893, 902 (7th Cir. 2016) (*Monell* "prohibits finding municipal liability through the theory of *respondeat superior.*").

To recover under *Monell*, Plaintiff must show that (1) she suffered a deprivation of a constitutional right; (2) as a result of an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was (3) the cause of her constitutional injury. *See Daniel v. Cook County,* ___ F.3d ___, 2016 WL 4254934, at *4 (7th Cir. Aug. 12, 2016); *Dixon v. Cnty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). Also, Plaintiff must establish that the official policy or custom was the direct cause or moving force behind the deprivation of her constitutional rights. *See Dixon*, 819 F.3d at 348.

Here, Plaintiff argues that "the factual allegations contained in the First Amended Complaint either explicitly or inferentially depict both the express policy and widespread practice of the City's enforcement of the Federal Monitor's finding and how it has harmed Plaintiff." As to Plaintiff's argument based on the City's application of the Federal Monitor's finding, Plaintiff fails to explain how the Federal Monitor's finding is an express policy or widespread custom of the City itself. *See Bethesda Lutheran Homes & Servs., Inc. v. Leean,* 154 F.3d 716, 718 (7th Cir. 1998) (plaintiff "must be able to trace the action of the employees who actually injured him to a policy or other action of the municipality itself."). Indeed, the Federal Monitor's finding is not a policy of the City because the federal court appointed the Federal Monitor as a special master to oversee the City's compliance with the federal court's orders. *See*

9

*Shakman v. City of Chicago,* No. 69 C 2145, 2014 WL 711010, at *2 (N.D. Ill. Feb. 21, 2014). Therefore, Plaintiff's argument based on the City's application of the Federal Monitor's finding fails as a matter of law.

The Court next turns to Plaintiff's argument that the City has a widespread practice of improperly enforcing the *Shakman* Decree causing her constitutional deprivations. *See Rice ex rel. Rice v. Correctional Med. Servs.,* 675 F.3d 650, 675 (7th Cir. 2012) ("a widespread practice [] is so entrenched and well-known as to carry the force of policy"); *see also Daniel,* 2016 WL 4254934, at *4 ("An unconstitutional policy can include both implicit policies as well as a gap in expressed policies."). Although Plaintiff gives sufficient detail concerning how City employees allegedly treated her in the context of the *Shakman* Decree, she has failed to allege other instances of this widespread practice or policy. In other words, Plaintiff has alleged only isolated acts rather than a widespread practice. *See Holloway v. Delaware Cnty. Sheriff,* 700 F.3d 1063, 1071 (7th Cir. 2012); *see also Daniel*, 2016 WL 4254934, at *4 (plaintiff "must show more than the deficiencies specific to his own experience"); *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003) ("When a plaintiff chooses to challenge a municipality's unconstitutional policy by establishing a widespread practice, proof of isolated acts of misconduct will not suffice."). Without more, Plaintiff has not plausibly stated that the City is liable for the alleged misconduct pursuant to an express or widespread custom, practice, or policy. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Court therefore grants the City's motion to dismiss in this regard. The Court also grants Plaintiff leave to file a Second Amended Complaint to provide

sufficient factual details supporting this theory of liability keeping in mind counsel's Rule 11 obligations.[2]

In addition, Plaintiff asserts that she has sufficiently alleged that a person with policymaking authority caused her constitutional injuries, namely, Commissioner Soo Choi of the Department of Human Resources. *See Waters v. City of Chicago,* 580 F.3d 575, 581 (7th Cir. 2009) ("both the City Council and Commissioner of Human Resources may be considered final policymakers for the City in the area of employment."). It "is well-established that when a particular course of action is directed by those who set municipal policy, the municipality is responsible under section 1983, even if the action in question is undertaken only once." *Valentino v. Village of S. Chicago Heights,* 575 F.3d 664, 675 (7th Cir. 2009); *see also Kristofek v. Village of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013).

In her First Amended Complaint, Plaintiff does not allege that Commissioner Choi set the policy at issue, namely, the *Shakman* Decree. *See Waters,* 580 F.3d at 582. To clarify, although the *Shakman* Decree represents the City's decision to adopt a particular course of action, Commissioner Choi was not the final policymaker in that decision. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy

---

[2] In general, parties aggrieved by the City's misapplication of the *Shakman* consent decree seek redress through civil contempt proceedings. *See Coleman v. Dunlap,* 695 F.3d 650, 651 (7th Cir. 2012); *see also Smith v. City of Chicago,* 769 F.2d 408, 411 (7th Cir. 1985) ("*Shakman* is a judicial decree; a violation of that decree is contempt of court."). In other words, "persons complaining of violations of the *Shakman* decree, which limits patronage practices in employment by the City of Chicago, litigate the violations as contempts of court, rather than having to prosecute them as independent suits." *Alliance to End Repression v. City of Chicago*, 356 F.3d 767, 771 (7th Cir. 2004) (internal citations omitted).

with respect to the action ordered."). Instead, the *Shakman* Decree reflects the City's agreement to cease hiring practices based on political affiliation. *See Bonnstetter,* 811 F.3d at 971; *Wzorek v. City of Chicago,* 906 F.2d 1180, 1183 (7th Cir. 1990). Put differently, Plaintiff's allegations fail to sufficiently state *Monell* liability because she maintains that Commissioner Choi misapplied the *Shakman* Decree and the Federal Monitor's findings – not that Commissioner Choi implemented *Shakman* Decree in the first instance. *See Auriemma v. Rice,* 957 F.2d 397, 400 (7th Cir. 1992) ("liability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy.").

Also, viewing the allegations and all reasonable inferences in her favor, Plaintiff has not sufficiently alleged that Commissioner Choi implemented a custom, practice, or policy amounting to an official policy that caused Plaintiff's constitutional deprivations. *See Dixon*, 819 F.3d at 348. Instead, Plaintiff highlights Commissioner Choi's conduct in enforcing the Federal Monitor's findings. In particular, Plaintiff alleges that Commissioner Choi spoke with the Federal Monitor on May 22, 2014 about why Plaintiff should not be in a role connected to the hiring process. (First Am. Compl. ¶ 23.) Shortly after this meeting, one of Commissioner Choi's Deputy Commissioners, namely, Christina Batorski, sent an email to employees in the Human Resources Department distributing the list of employees from the Federal Monitor's report regarding the "employees not allowed to be a part of the hiring process" list on May 29, 2014. (*Id.* ¶ 25.) On June 2, 2014, in a memorandum from the Federal Monitor in which Commissioner Choi was carbon copied, the Federal Monitor renewed her request to "exclude [Plaintiff] from the hiring process in its entirety and to exclude her from positions wherein she

would exercise significant control and discretion over other similar employment actions." (*Id.* ¶ 26.) Deputy Commissioner Batorski further informed Plaintiff as late as February 2016 that she would not be allowed to apply for promotional positions that relate to the hiring process. (*Id.* ¶¶ 10, 41-43.)

These allegations do not plausibly state a claim against the City based on a final policymaker's decision. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Instead, they set forth Commissioner Choi's and Deputy Commissioner Batorski's involvement in applying the Federal Monitor's finding. The Court, therefore, grants the City's motion on this basis with prejudice because any attempt to amend these final policymaker allegations would be futile under the circumstances.

## II.     Liability Under 42 U.S.C. § 1981 – Counts V and VII

Next, the City argues that Plaintiff cannot bring her employment discrimination claims alleged in Counts V and VII under 42 U.S.C. § 1981, but instead must bring her claims under 42 U.S.C. § 1983. Indeed, § 1983 provides the exclusive remedy for violations of § 1981 committed by state actors such as the City. *See Campbell v. Forest Preserve Dist. of Cook County, Ill.,* 752 F.3d 665, 667 (7th Cir. 2014); *see also Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 736-37, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Accordingly, as Plaintiff agrees, she must set forth a basis for the City's liability under § 1983, as discussed above. At this juncture, Plaintiff has failed to sufficiently allege the City's liability under § 1983, therefore, the Court grants the City's motion to dismiss these claims. The Court, however, also grants Plaintiff leave to file a Second Amended Complaint in accordance with this ruling.

The Court next turns to the City's argument that – even if Plaintiff had sufficiently alleged *Monell* liability under § 1983 – she has failed to plausibly allege a hostile work environment claim based on her race under the federal pleadings standards. To establish a hostile work environment, Plaintiff must eventually show that: (1) her work environment was both subjectively and objectively offensive; (2) her race was the cause of the harassment; (3) the City's conduct was severe or pervasive; and (4) a basis for employer liability. *See Liu v. Cook Cnty.*, 817 F.3d 307, 318 (7th Cir. 2016).

Under the circumstances, Plaintiff has failed to allege sufficient factual details raising her right to relief beyond a speculative level. *See Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015) ("A claim for relief must be plausible rather than merely conceivable or speculative."). Rather, in vague terms, she alleges that "[t]he conduct that Plaintiff Lanton was subjected to because of her race was so severe and/or pervasive that a reasonable person in Plaintiff Lanton's position would find that work environment to be hostile and abusive." (First Am. Compl. ¶ 86.) Without more, Plaintiff's allegations do not meet the federal pleading standard. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). The Court therefore grants this aspect of the City's motion to dismiss without prejudice and grants Plaintiff leave to amend these allegations.

### III. Due Process Property Interest Claims – Counts I and III

In Counts I and III of her First Amended Complaint, Plaintiff alleges due process violations based on her property rights in connection with the Labor Relations Supervisor position. Plaintiff not only argues that she has a protected property interest in the promotion, but

14

also that she was actually given the Labor Relations Supervisor job that the City "stripped away" from her. On the other hand, the City argues that Plaintiff's property interest claims fail as a matter of law because she does not have a constitutionally protected property interest in a promotion to the Labor Relations Supervisor position or other similar positions.

"The touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974), "whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis,* 523 U.S. 833, 845-46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (internal citations omitted). "[T]o determine whether due process requirements apply in the first place" courts "must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 570-71, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). A protected property interest is a legitimate claim of entitlement, not defined by the Constitution, but "by existing rules or understandings that stem from an independent source such as state law." *Id.* at 577; *see also Dibble v. Quinn,* 793 F.3d 803, 808 (7th Cir. 2015) ("independent source of law can include 'a statute, regulation, municipal ordinance, or an express or implied contract.'") (citation omitted).

The presumption in Illinois is that employment is at-will. *See Rujawitz v. Martin*, 561 F.3d 685, 688-89 (7th Cir. 2009). Under Illinois law, however, "a person has a property interest in his job where he has a legitimate expectation of his continued employment based on a legitimate claim of entitlement." *Cromwell v. City of Momence,* 713 F.3d 361, 364 (7th Cir. 2013) (citation omitted). "To show a legitimate expectation of continued employment, a plaintiff

15

must show a specific ordinance, state law, contract or understanding limiting the ability of the a state or state entity to discharge him." *Rujawitz*, 561 F.3d at 689.

Plaintiff bases her protected property interest claim on her status as a "career service" employee under the City's municipal code. Specifically, under Chicago's municipal code, the City's employment positions are classified into two categories – "career service" positions and positions exempt from career service. *See Phelan v. City of Chicago,* 347 F.3d 679, 682 (7th Cir. 2003) (citing Chicago Municipal Code 2-74-030). Under the municipal code, "career service" employees are afforded procedural protections for their employment. *Id.* (citing Chicago Municipal Code 2-74-060). These protections include procedures relevant to disciplinary measures such as suspension, demotion, or discharge. *See Phelan v. City of Chicago,* 125 F. Supp. 2d 870, 874 (N.D. Ill. 2000) (citing Chicago Municipal Code 2-74-050(12)); *see also* Chicago Municipal Code 2-74-060.

Under the facts as alleged, the City argues that it did not discharge, demote, or suspend Plaintiff, but instead, Plaintiff did not receive a promotion. On the other hand, Plaintiff asserts that the City "stripped away" her promotion arguing that it was "essentially a demotion." Plaintiff, however, unequivocally alleges that she "was told she would not be able to take the position" of Labor Relations Supervisor. (First Am. Compl. ¶ 29.) Other allegations in the First Amended Complaint indicate that Plaintiff did not begin working as the Labor Relations Supervisor on her June 1, 2014 start date or thereafter. (*Id*. ¶¶ 18, 30-37.) Therefore, Plaintiff's allegations that the City's conduct amounted to a demotion are not supported by her allegations.

The City also argues that Plaintiff did not have a protected property interest in her promotion. Generally speaking, an employee does not have a property interest in a promotion.

16

*See Bigby v. City of Chicago,* 766 F.2d 1053, 1056 (7th Cir. 1985); *see also United States v. City of Chicago,* 869 F.2d 1033, 1036 (7th Cir. 1989) ("Illinois law does not create an entitlement to a promotion" in public employment); *Norris v. City of Chicago,* No. 07 C 6776, 2008 WL 4277646, at *3 (N.D. Ill. Sept. 17, 2008) ("Because the Municipal Code does not give plaintiff a property interest in the promotion or the promotion process, his failure to be considered for or awarded the Safety Director position cannot be the basis for a due process claim."). As the Illinois Appellate Court teaches:

> [W]hen the promoting authority has discretion to choose among candidates on a promotion list, an employee does not have a property interest in a prospective promotion by virtue of his or her name being on that list. This reasoning makes sense, given that it would be inconsistent with the expressed limits of due process protections to grant property interests to those who have no concrete claim of entitlement to a promotion but are instead at the mercy of an authority's discretion.

*Chamberlain v. Civil Serv. Comm'n of Vill. of Gurnee,* 18 N.E.3d 50, 62, 385 Ill.Dec. 50 (2d Dist. 2014) (collecting cases). In *Chamberlain,* however, the Illinois Appellate Court concluded that under the statute at issue, 50 ILCS 742/20(d), defendants had no such discretion, but instead were required to appoint the highest-ranking person on the promotion list. *See id.* at 62-63. Under such circumstances, the Illinois Appellate Court concluded that the plaintiff had a property interest in the promotion and that the relevant question was whether there as a sufficient reason to take away a statutory expectation in that promotion. *See id*. at 63.

Similarly, Plaintiff maintains that the City did not have discretion in promoting her, but "had to offer Plaintiff the job because of her rank after the interview process." Because of this lack of discretion, Plaintiff asserts she has a protected property interest in the promotion. The Court agrees. At this stage of the proceedings, Plaintiff has sufficiently alleged her due process

17

property interest claim. Whether the City did – in fact – have discretion in its decision to promote Plaintiff is best left for summary judgment after the parties have developed the record. The Court, therefore, denies this aspect of the City's motion to dismiss.

## IV. Liberty Interest Claims – Counts II and IV

Plaintiff also bases her due process claims on her liberty interest in her employment. The "concept of liberty protected by the due process clause has long included occupational liberty – 'the liberty to follow a trade, profession, or other calling.'" *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015) (citations omitted). As the Seventh Circuit teaches, it "is the liberty to pursue a *calling or occupation,* and not the right to a specific job, that is secured by the Fourteenth Amendment." *Id.* (emphasis in original) (citation omitted). A government employee's liberty interests are implicated when the government "make[s] any charge against him that might seriously damage his standing and associations in the community" or "impose[s] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Roth,* 408 U.S. at 573. "[T]o prevail on a liberty interest claim, a plaintiff must show 'that (1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publically disclosed, and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure.'" *Covell v. Menkis,* 595 F.3d 673, 677-78 (7th Cir. 2010) (citation omitted). "The public-disclosure element requires that the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers or the community at large." *Palka v. Shelton,* 623 F.3d 447, 454 (7th Cir. 2010).

Viewing Plaintiff's allegations and all reasonable inferences in her favor, she has failed to plausibly allege that the City publically disclosed stigmatizing comments that would reach

future employers or the community at large. Instead, she alleges the opposite, namely:

> Defendant, acting under color of state and municipal law, deprived Plaintiff's liberty interest, when Brennan's secret finding was communicated to Human Resources which resulted in Plaintiff's job offer to the Labor Relations Supervisor position in Streets and Sanitation being revoked. Human Resources communicates Brennan's secret finding to other hiring bodies throughout the Defendant City of Chicago.

(First Am. Compl. ¶ 64.) She also alleges that the City, "acting under color of state and municipal law, deprived Plaintiff's liberty interest, when Brennan's secret finding was communicated to Human Resources which resulted in Plaintiff's job offer to the Labor Relations Supervisor position in Streets and Sanitation being revoked." (*Id*. ¶ 80.)

Under these facts, Plaintiff has failed to sufficiently allege a plausible due process liberty interest claim because she has not alleged that the City publically disseminated stigmatizing comments that would reach future employers or the community at large. *See Iqbal,* 556 U.S. at 678 (complaint plausible on its face when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Court therefore grants the City's motion to dismiss Plaintiff's due process liberty interest claim with prejudice because Plaintiff pleaded herself out of court by alleging that Brennan's finding was secret and that the City disseminated this information to its own Human Resources Department or "other hiring bodies" within the City – not the community at large or future employers. *See O'Gorman v. City of Chicago,* 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law.").

## V. Private Cause of Action under Illinois Constitution – Counts VIII and X

In Counts VIII and X of the First Amended Complaint, Plaintiff alleges that the City denied her equal protection based on her race and sex in violation of Article I, Section 2 of the Illinois Constitution. There is no private cause of action for violations of Article I, Section 2 of the Illinois Constitution against employers who commit civil rights violations. *See Bonnstetter v. City of Chicago,* No. 13 C 4834, 2014 WL 3687539, at *6 (N.D. Ill. July 24, 2014). Instead, the Illinois Human Rights Act ("IHRA") provides the exclusive remedy over civil rights violations in Illinois. *See* 775 ILCS 5/8-111(D) ("[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."). What this means for Plaintiff is that she must first exhaust her state law equal protection claims before seeking judicial review. *See Rabe v. United Air Lines, Inc.*, 971 F. Supp. 2d 807, 819 (N.D. Ill. 2013) ("The IHRA provides a comprehensive scheme of procedures and remedies for redressing human rights violations."). Here, Plaintiff admits that she has not exhausted these claims, and thus the Court grants this aspect of the City's motion to dismiss without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the City's motion to dismiss and grants Plaintiff leave to file a Second Amended Complaint in accordance with this ruling.

**Date:** August 17, 2016

                              **ENTERED**

                              *[signature]*

                              **AMY J. ST. EVE**
                              **United States District Court Judge**