**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DENISE LANTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 16 C 2351 |
| v. | ) |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On August 17, 2016, the Court granted in part and denied in part Defendant City of Chicago's motion to dismiss Plaintiff Denise Lanton's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).[1] The Court also granted Plaintiff leave to file a Second Amended Complaint, which she filed on September 9, 2016. After Defendant filed the present Rule 12(b)(6) motion to dismiss Counts I and III-V of Plaintiff's Second Amended Complaint, Plaintiff filed a Third Amended Complaint based on the Court's original and supplemental jurisdiction on November 3, 2016. *See* 28 U.S.C. §§ 1331, 1367(c). Plaintiff also filed a response to Defendant's pending motion to dismiss. The Court then directed Defendant to address Plaintiff's allegations in the Third Amended Complaint in its reply brief and allowed Plaintiff to file a sur-reply.

Before the Court is Defendant's Rule 12(b)(6) motion to dismiss the following claims brought pursuant to the Court's original jurisdiction in 28 U.S.C. § 1331 in Plaintiff's Third Amended Complaint: (1) Plaintiff's Fourteenth Amendment Due Process claim (Count I); (2)

---

[1] The Court presumes familiarity with its August 17, 2016 Memorandum, Opinion and Order. [R. 26.]

Plaintiff's failure to promote/race discrimination claim brought under 42 U.S.C. §§ 1981, 1983 (Count III); (3) Plaintiff's Fourteenth Amendment Equal Protection claim based on race (Count IV); and (4) Plaintiff's Fourteenth Amendment Equal Protection claim based on gender (Count V). The Court grants the City's motion to dismiss in its entirety and, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's claim based on the Illinois Constitution as alleged in Count II. *See* 28 U.S.C. § 1367(c)(3). The Court therefore dismisses this lawsuit in its entirety.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1397, 1949, 172 L.Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

**BACKGROUND**

In her Third Amended Complaint, Plaintiff alleges that she has been the City's employee since 1988 starting as a paralegal in the City's Law Department. (R. 34, Third Am. Compl. ¶ 7.) In 1994, Plaintiff was promoted to Assistant to the Commissioner in the Department of Streets and Sanitation (hereinafter "Streets & Sanitation"). (*Id.* ¶ 8.) In 1999, Plaintiff was promoted to the position of Administrative Service Officer II – a position she still holds. (*Id.* ¶ 9.) In her role as Administrative Service Officer II, Plaintiff works on labor relations matters, hiring practices disciplinary issues, grievances, arbitrations, and policy development within Streets & Sanitation. (*Id.* ¶ 11.)

On February 17, 2014, the City's Department of Human Resources posted a position for Labor Relations Supervisor in Streets & Sanitation, which would have been a promotion for Plaintiff. (*Id.* ¶¶ 12, 13.) Plaintiff applied for the position, and on May 8, 2014, the City interviewed her in accordance with the required hiring procedures. (*Id.* ¶ 14.) Plaintiff asserts that the interview process for these types of positions in the City is very structured. (*Id.* ¶ 15.) Specifically, the City screens the candidates and then the Inspector General's Office ranks the candidates numerically. (*Id.* ¶ 16.) After her interview, the Streets & Sanitation's Personnel Division informed Plaintiff that the result of the hiring panel's consensus ranked her as the first alternate for the position of Labor Relations Supervisor – above all other candidates except the individual whom they selected for the position. (*Id.* ¶ 17.) On May 19, 2014, the Director of Personnel Maria Contreras called Plaintiff to notify her that the first choice candidate for the Labor Relations Supervisor position had declined the City's job offer. (*Id.* ¶ 18.) Because Plaintiff was the first alternate choice, Contreras offered Plaintiff the job, and Plaintiff accepted

that same day. (*Id*.) Plaintiff contends that she was scheduled to start as the Labor Relations Supervisor on June 1, 2014. (*Id*. ¶ 19.)

On May 21, 2014, Noelle Brennan, the federal court-appointed monitor of the *Shakman* Consent Decree, filed her "Corrected May 21, 2014 Report on Substantial Compliance." (*Id*. ¶ 20.) Brennan was responsible for monitoring how the City complied with the *Shakman* Decree, which prevented the City from basing its hiring decisions on an applicant's political affiliation.[2] (*Id*.) In her May 2014 report, Brennan recommended that the federal court no longer needed to actively monitor the City's hiring practices. (*Id*. ¶ 21.) Brennan, however, recommended that approximately ten employees needed "further investigation." (*Id*. ¶ 22.) Plaintiff was one of the individuals whom Brennan had identified as needing "further investigation." (*Id*. ¶ 23.)

Plaintiff alleges that on May 22, 2014, the Commissioner of the Department of Human Resources spoke with Brennan regarding Plaintiff's hiring to the position of Labor Relations Supervisor. (*Id*. ¶ 29.) Brennan gave her opinion that the City should not hire Plaintiff in this role because the job was connected to the hiring process. (*Id*.) Nonetheless, on May 27, 2014, Plaintiff met with Contreras to complete the hiring paperwork. (*Id*. ¶ 30.) At this meeting, the Commissioner of Streets & Sanitation Charles Williams told Plaintiff that there was a problem with Human Resources, but that he would work on it. (*Id*.) Commissioner Williams directed Contreras to proceed with finalizing Plaintiff's hiring paperwork. (*Id*.)

On June 2, 2014, Brennan amended her report regarding Plaintiff. (*Id*. ¶ 32.) More, specifically, Brennan renewed her request to "exclude [Plaintiff] from the hiring process in its

---

[2] "Pursuant to the *Shakman* Accord, the City agreed to create and implement a hiring plan to effectuate the goal of eradicating political patronage." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 971 (7th Cir. 2016).

entirety and to exclude her from positions wherein she would exercise significant control and discretion over other similar employment actions." (*Id*.) Plaintiff alleges that in this memorandum, Brennan also requested that the City and Inspector General review Plaintiff's interview transcript and another individual's transcript to "determine whether further investigation is warranted." (*Id*. ¶ 33.) According to Plaintiff, the City never conducted an investigation into her alleged misconduct after Brennan's recommendation for "further investigation," but rather notified Brennan that it had disciplined Plaintiff by barring her from participating in any aspect of the hiring process. (*Id*. ¶ 35.) Plaintiff alleges that the City never gave her an opportunity to defend herself against Brennan's allegations of wrongdoing – such as notice of the allegations, a hearing, or an opportunity to be heard – despite her written requests to the Streets & Sanitation's Commissioner. (*Id*.)

Also in June 2014, the City told Plaintiff that she could not take the position as the Labor Relations Supervisor. (*Id*. ¶ 36.) On June 24, 2014, Plaintiff sent a letter to Commissioner Williams requesting the documents underlying the decision to revoke her job offer and an opportunity to respond to Brennan's allegations. (*Id*. ¶ 37.) In that letter, Plaintiff explained that Brennan based her report on innuendoes of participants in a past hiring fraud scheme. (*Id*. ¶ 38.) As discussed, the City nevertheless revoked Plaintiff's promotion without conducting any further investigations. (*Id*. ¶ 39.) Thereafter, throughout the remainder of 2014 and 2015, Plaintiff asked her immediate supervisor and others if they had received Brennan's allegations of misconduct against her. (*Id*. ¶ 40.)

On January 7, 2016, the Chicago Fire Department ("CFD") contacted Plaintiff via email asking her to interview for a Labor Relations Supervisor position with the CFD. (*Id*. ¶ 46.) This position was the same position Plaintiff could not take due to Brennan's recommendation in June

5

2014. (*Id.*) The next day, Plaintiff accepted the CFD's request to interview. (*Id.* ¶ 47.) On January 12, 2016, Joann McNeil, Supervisor of Personnel Services for the CFD, told Plaintiff that the CFD had to cancel her interview at the behest of the City's Human Resources Department. (*Id.* ¶ 48.) In response, Plaintiff emailed McNeil asking her why the CFD cancelled her interview, after which McNeil explained that she did not know why and gave Plaintiff the contact information of Deputy Commissioner Christina Batorski from the City's Human Resources Department. (*Id.* ¶ 49.) Batorski responded to Plaintiff that she could not participate in the hiring process because of Brennan's finding, namely, that Plaintiff was not eligible for the CFD position and that Plaintiff's inclusion on the referral list was in error. (*Id.* ¶¶ 50, 51.)

On March 11, 2016, Plaintiff learned that the City had promoted an individual named Christopher Suave to a Deputy Commissioner position with Streets & Sanitation in February 2016. (*Id.* ¶ 52.) Plaintiff alleges that she is an African-American female who is 59-years-old and that Suave is Caucasian male who is younger. (*Id.* ¶¶ 53, 54.) Also, Plaintiff alleges, upon information and belief, that Suave was recommended for and received harsher discipline from the Federal Monitor than she did. (*Id.* ¶ 55.) Plaintiff maintains that the City suspended Suave for a period of time due to the Federal Monitor's findings and that despite this discipline, Suave's ability to be promoted to Deputy Commissioner was not hindered. (*Id.* ¶¶ 56, 57.) To date, Plaintiff remains barred from promotion due to the Monitor's recommendations. (*Id.* ¶ 50.)

## ANALYSIS

### I. Due Process Claim – Count I

Plaintiff's Fourteenth Amendment Due Process claim against the City in Count I is based on the City's enforcement of the *Shakman* Decree, specifically, the *Shakman* Monitor's May 21,

2014 Report on Substantial Compliance.  It is undisputed that the City's liability cannot be based on respondeat superior, and thus *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), governs Plaintiff's claims against the City.  To recover under *Monell*, Plaintiff must show that (1) she suffered a deprivation of a constitutional right; (2) as a result of an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was (3) the cause of her constitutional injury.  *See Daniel v. Cook Cnty.,* 833 F.3d 728, 734 (7th Cir. 2016); *Dixon v. Cnty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).  "An unconstitutional policy can include both implicit policies as well as a gap in expressed policies," and must be the "moving force" behind the plaintiff's constitutional deprivation.  *Daniel*, 833 F.3d at 734.

As the Court explained in its August 2016 ruling, Plaintiff's allegations did not state a plausible *Monell* claim against the City under the federal pleading standards because – although she gave sufficient details concerning how City employees treated her in the context of the *Shakman* Decree – she failed to allege any other instances of a widespread practice or policy.  *See Daniel,* 833 F.3d at 734 (plaintiff "must show more than the deficiencies specific to his own experience"); *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (*Monell* liability requires conduct in "more than one instance").  In other words, "[w]hen a plaintiff chooses to challenge a municipality's unconstitutional policy by establishing a widespread practice, proof of isolated acts of misconduct will not suffice."  *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003); *see, e.g., Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012).  The Court thus turns to Plaintiff's amended pleadings to determine whether her *Monell* allegations are plausible under this precedent.

7

In her Third Amended Complaint, Plaintiff alleges that the City never gave her an opportunity to defend herself against the *Shakman* Monitor's allegations of wrongdoing – such as notice of the allegations, a hearing, or an opportunity to be heard – despite her numerous requests. Plaintiff specifically alleges that "[u]pon information, belief, and [her] personal experience, the City has a widespread practice of depriving employees identified as needing 'further investigation' by the Monitor or other Monitor-related discipline of their rights under the United States and Illinois Constitutions, *inter alia,* not providing any opportunity for the disciplined." (Third Am. Compl. ¶ 24.) Plaintiff further alleges that "[u]pon information and belief, the City did not perform any 'further investigation' of [her] or any of the other employees recommended for further investigation" and that "these employees were disciplined without any further investigation." (*Id.* ¶¶ 26, 27.) In addition, Plaintiff alleges that the City's policy was enforced by the City's Department of Human Resources against her and other employees. (*Id.* ¶ 28.)

In response to Plaintiff's new allegations, the City takes issue with Plaintiff's use of the phrase "upon information and belief" arguing that this demonstrates that Plaintiff has failed to sufficiently allege her *Monell* claim based on the City's enforcement of the *Shakman* Decree. Although a plaintiff's ability to state allegations based on "information and belief" is restricted in the context of fraud allegations pursuant to Rule 9(b), under Rule 8(a), "[w]here pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (citation omitted); *see, e.g., Huon v. Denton*, 841 F.3d 733, 743 (7th Cir. 2016). Thus, the City's better argument is that Plaintiff's allegations are conclusory and reflect a boilerplate recitation of *Monell's* requirements. *See Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir.

8

2016) ("While a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her complaint to be considered adequate under Federal Rule of Civil Procedure 8.") (quoting *Iqbal*, 556 U.S. at 678).

Viewing Plaintiff's allegations as true and all reasonable inferences in her favor – as the Court is required to do at this procedural posture – she has not provided enough factual detail to support her *Monell* claim based on the City's practice of enforcing the *Shakman* Decree. In particular, Plaintiff's theory of the case is that despite her repeated requests for "further review" after the *Shakman* Monitor's May 2014 findings, the City did not perform any further investigation into the allegations. As to the employees that the *Shakman* Monitor listed in her report, Plaintiff fails to allege that any of these individuals requested additional review or any further investigation. Despite her allegations that she is "barred from promotion within her field because of the Federal Monitor's recommendations," Plaintiff fails to point to at least one other employee who was similarly barred. Also, as Plaintiff alleges, the *Shakman* Monitor amended her report in relation to Plaintiff requesting the City to "exclude [Plaintiff] from the hiring process in its entirety and to exclude her from positions wherein she would exercise significant control and discretion over other similar employment actions." (Third Am. Compl. ¶ 32.) Plaintiff, however, does not allege that other individuals who were listed in the *Shakman* Monitor's May 2014 report were also subject to any such amended report, which included the *Shakman* Monitor's directive to review transcripts underlying her finding of misconduct.

After excising the legal conclusions from Plaintiff's allegations, the Court is left with very little, if any, factual support of a widespread custom or practice. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). As such, the Court cannot draw a reasonable

inference that the City has a widespread custom or practice causing Plaintiff's (and others) constitutional deprivations, but instead can only infer a random, isolated incident related to Plaintiff. *See Iqbal,* 556 U.S. at 678. In other words, Plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Because the Court has already granted Plaintiff leave to amend her *Monell* allegations to provide more factual detail, the Court grants Defendant's motion to dismiss Plaintiff's Fourteenth Amendment Due Process claim as alleged in Count I of the Third Amended Complaint with prejudice.

## II. Race Discrimination and Equal Protection Claims – Counts III, IV, and V

Plaintiff's *Monell* allegations in relation to her race discrimination/failure to promote claim and Equal Protection claims fare no better. Plaintiff's allegations of the City's practice or policy regarding her race discrimination claim consists of one sentence, namely, "[u]pon information and belief, the City had a widespread practice of depriving African American employees recommended for 'further investigation' by the Monitor or other Monitor-related discipline of promotional opportunities afford to Caucasian employees also recommended for 'further investigation' or other discipline by the Monitor." (Third Am. Compl. ¶ 94.) Plaintiff's Equal Protection claim based on race states the exact same language as her race discrimination claim directly above. (*Id.* ¶ 103.) Although Plaintiff points to a white individual who received discipline based on the Monitor's findings, Plaintiff's allegations fail to supply any details regarding other African-American employees who are part of her discrimination claim or Equal Protection claim based on race. Indeed, in her legal memoranda in opposition to the City's motion to dismiss, Plaintiff makes only a cursory and unsubstantiated argument supporting these two claims. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not

10

th[e] court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver.") (citation omitted). The Court therefore grants the City's motion to dismiss Counts III and IV for lack of sufficient detail regarding the City's liability under *Monell*. *See Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Similarly, Plaintiff's allegations supporting her Equal Protection claim based on gender are insufficient under the federal pleading standards. *See Twombly*, 550 U.S. at 555 (a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level."). In her Third Amended Complaint, she simply alleges that "[u]pon information and belief, the City had a widespread practice of depriving female employees recommended for 'further investigation' by the Monitor or other Monitor-related discipline of promotional opportunities afforded to male employees also recommended for 'further investigation' or other discipline by the Monitor." (Third Am. Compl. ¶ 108.) Again, Plaintiff fails to point to any other female employees, but merely cut and pasted her *Monell* allegations without giving any details in relation to any incidents other than her own. *See Daniel,* 833 F.3d at 734 (plaintiff "must show more than the deficiencies specific to his own experience"). As discussed, in her legal memoranda, Plaintiff fails to develop her arguments explaining how she sufficiently alleged this claim under *Iqbal* and *Twombly*. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman–Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Plaintiff's reliance on *Ragland v. Dart*, No. 15 C 173, 2016 WL 537965, at *3 (N.D. Ill. Feb. 10, 2016), does not save the day because, in that matter, the district court concluded that the plaintiff's allegations of the alleged policy or practice

were too vague, broad, and lacking in sufficient detail to put defendants on notice of the claim – as is the case here. Accordingly, the Court grants the City's motion to dismiss Count V of the Third Amended Complaint with prejudice.

### III. Supplemental Jurisdiction

Plaintiff's remaining claim in this lawsuit is based on the Illinois Constitution in Count II. Because the Court is dismissing, with prejudice, Plaintiff's claims over which the Court has original jurisdiction, the Court, in its discretion, declines to exercise supplemental jurisdiction over this remaining state law claim. *See* 28 U.S.C. § 1367(c)(3). As the Seventh Circuit teaches, "[a] district court has discretion to decline to exercise supplemental jurisdiction over state law claims arising from the same case or controversy as the federal claims where … 'the district court has dismissed all claims over which it has original jurisdiction.'" *Doe v. Vill. of Arlington Heights,* 782 F.3d 911, 920 (7th Cir. 2015) (quoting 28 U.S.C. § 1367(c)(3)); *see also Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015). Although the decision to relinquish supplemental jurisdiction is within the district court's broad discretion, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.,* 672 F.3d 476, 479 (7th Cir. 2012).

Under this well-settled precedent, the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law claim and dismisses Count II without prejudice. *See, e.g., Bell v. City of Country Club Hills*, 841 F.3d 713, 718 (7th Cir. 2016).

## CONCLUSION

For these reasons, the Court grants Defendant's Rule 12(b)(6) motion to dismiss with prejudice and declines to exercise supplemental jurisdiction over Plaintiff's state law claim as alleged in Count II.

**Date:** February 13, 2017

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**